UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

MARLENA DIEDRE YOUNG,

    Plaintiff,

v.                                                             Case No. 3:14-CV-719-J-MCR

CAROLYN W. COLVIN,
Acting Commissioner of the United
States Social Security Administration,

    Defendant.
_____/

## ORDER

The Plaintiff brings this action pursuant to the Social Security Act (the "Act"), as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her claim for Disability Insurance Benefits ("DIB").

Upon a review of the record, including a transcript of the proceedings before the Administrative Law Judge ("ALJ"), the ALJ's decision, the administrative record, and the pleadings and memoranda submitted by the parties in this case, and for the reasons set forth herein, the Commissioner's decision in this case is **REVERSED and REMANDED**.

### I. Background

The Plaintiff filed for DIB on June 29, 2009 alleging that she became disabled on December 10, 2005. R. 277-84. The Plaintiff's application was denied initially and upon reconsideration. The Plaintiff requested and received a hearing, which was held on November 9, 2010 before ALJ Brendan Flanagan. R. 63-106. In a decision dated January 14, 2011, ALJ Flanagan found the Plaintiff not disabled under the Act. R. 112-20. On April 11, 2012, the

Appeals Council granted the Plaintiff's request for review and remanded her case for further consideration. R. 129-30. On December 4, 2012, the Plaintiff appeared before ALJ Gregory J. Froehlich (hereafter as the "ALJ") for a new hearing (hereafter as the "Hearing"). R. 38-60. In a decision dated February 15, 2013 (hereafter as the "Decision), the ALJ found the Plaintiff not disabled under the Act. R. 18-28. The Plaintiff timely exhausted her administrative remedies, and this case is properly before the Court for review under 42 U.S.C. § 405(g).

## II. The ALJ's Decision

When determining whether an individual is disabled, the ALJ must follow the five-point sequential evaluation process established by the Social Security Administration and set forth in 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4). Specifically, the ALJ must determine whether the claimant (1) is currently employed; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals an impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-40 (11th Cir. 2004). The claimant bears the burden of persuasion through step four, and, at step five, the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987).

In his Decision, the ALJ performed the required five-step sequential analysis. R. 18-28. At the outset, the ALJ noted that the Plaintiff last met the insured status requirements of the Act on December 31, 2010. R. 20. At step one, the ALJ found that the Plaintiff had not engaged in substantial gainful activity during the period from her alleged onset date through her date last insured (hereafter as the "relevant period"). R. 20. At step two, the ALJ determined that during the relevant period the Plaintiff suffered from the severe impairments of "degenerative joint disease (DJD) of the knees, status post spine surgery (ACDF), and abdominal adhesions." R. 20-

21. At step three, the ALJ found that during the relevant period the Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments under 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 22. Next, the ALJ found that during the relevant period the Plaintiff retained the residual functional capacity ("RFC") to perform a limited range of light work. R. 22-25. At step four, the ALJ determined that during the relevant period the Plaintiff was unable to perform any past relevant work. R. 26. At step five, based in part on the testimony of a vocational expert ("VE") at the Hearing, the ALJ found that the Plaintiff was capable of performing the requirements of representative occupations such as a gate guard, office helper, and case aide. R. 26-27. Based on his finding at step five, the ALJ concluded that the Plaintiff was not disabled during the relevant period. R. 27-28.

### III. Standard of Review

The scope of the Court's review is limited to determining whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence. *Crawford v. Commissioner of Social Security*, 363 F.3d 1155, 1158 (11th Cir. 2004). Substantial evidence is "more than a scintilla but less than a preponderance. It is such relevant evidence that a reasonable person would accept as adequate to support a conclusion." *Winschel v. Commissioner of Social Security*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation omitted). If the Commissioner's findings of fact are supported by substantial evidence, they shall be conclusive. 42 U.S.C. § 405(g). Further, when the Commissioner's decision is supported by substantial evidence, the district court will affirm even if the reviewer would have reached a contrary result as finder of fact and even if the reviewer finds that the preponderance of the evidence is against the Commissioner's decision. *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The district court "may not decide facts anew, reweigh the evidence, or substitute our judgment for that of

the [Commissioner.]" *Id.* "The district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision." *Foote v. Chater*, 67 F.3d 1533, 1560 (11th Cir. 1995); *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (noting that the court must scrutinize the entire record to determine the reasonableness of the factual findings).

## IV. Discussion

The Plaintiff challenges the ALJ's Decision on four grounds:

1) The ALJ failed to properly evaluate the opinions of the Plaintiff's treating sources;

2) The ALJ failed to properly weigh the Plaintiff's 100% disability rating from the Department of Veterans Affairs (the "VA");

3) The ALJ failed to properly evaluate the consultative examiner's opinion; and

4) The ALJ improperly relied on flawed VE testimony.

For the reasons discussed below, the Court finds that the ALJ's Decision was not based on substantial evidence and failed to comport with applicable legal standards.

### A. The ALJ's Evaluation of the Opinion Evidence on Record (Issues 1 and 3)

The Plaintiff argues that the ALJ failed to properly assess the various medical opinions on record in assessing the functional impact of her physical and mental impairments. Generally, an ALJ must demonstrate that he considered all the pertinent evidence in a claimant's case record when making a disability determination. *See McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986). In addition, an ALJ is required to, "state with particularity the weight he gave the different medical opinions and the reasons therefor." *Sharfarz v. Bowen*, 825 F.2d 278, 279-

80 (11th Cir. 1987). For a treating physician's testimony, an ALJ must ordinarily give substantial or considerable weight to such testimony unless "good cause" is shown to the contrary. *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004); *Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987) (noting that a treating physician's medical opinion may be discounted when it is not accompanied by objective medical evidence). "Good cause" for rejecting a treating source's opinion may be found where the treating source's opinion was not bolstered by the evidence, the evidence supported a contrary finding, or the treating source's opinion was conclusory or inconsistent with his or her own medical record. *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004). Such a preference is given to treating sources because they are likely to be best situated to provide a detailed and longitudinal picture of the medical impairments. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). However, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision...." *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005). Instead, "the ALJ must state with some measure of clarity the grounds for his decision." *Winschel v. Commissioner*, 631 F.3d 1176, 1179-80 (11th Cir. 2011).

The record contains two physical RFC questionnaires completed by Rashmi Godbole, M.D., who treated the Plaintiff's abdominal impairments during the relevant period. The first questionnaire, completed on July 7, 2009, noted that the Plaintiff suffered from an overall decreased functionality that generally complimented the ALJ's RFC assessment. *See* R. 1343-46. However, Dr. Godbole also opined that the Plaintiff was incapable of working in even low stress job environments and would likely be absent from work at least four days per month. *See id.* The second questionnaire, completed on November 28, 2012, contained nearly identical findings regarding the Plaintiff's functionality. *See* R. 1642-45. Both questionnaires stated that

the Plaintiff's symptoms and limitations were present as early as July 22, 2005. R. 1346, 1645. The record also contains a November 13, 2012 physical RFC questionnaire completed by Jeffrey Caudill, M.D., which also indicated that the Plaintiff was incapable of performing even low stress jobs due to constant severe pain and associated symptoms. R. 1485-88. Dr. Caudill also authored a March 11, 2010 letter in which he noted that the Plaintiff suffered from chronic daily pain in spite of surgery, medications, and other treatment regimens. R. 1454. Dr. Caudill noted that while certain narcotic medications had stabilized the severity of the pain, these medications caused a number of other side effects, including "occasional headache, loss of appetite, restlessness, nervousness, nightmares, unusual dreams, problems sleeping, tiredness, inability to concentrate/staying focused and mental sluggishness." *Id.*

In his Decision, the ALJ discussed Dr. Godbole's and Dr. Caudill's opinions, but afforded them little weight because they were "not consistent with the claimant's treatment notes or with the remainder of the objective medical evidence of record." R. 25. However, the ALJ did not elaborate as to how the objective medical record specifically contradicted these treating opinions. Considering that the extensive medical record in this case included longitudinal findings that were largely consistent with Dr. Godbole's and Dr. Caudill's opinions, the Court is unable to determine whether the ALJ's terse assessment of these medical opinions was based on substantial evidence. Thus, the Court finds that remand is necessary for further consideration of the medical evidence and opinions in this case.

A review of the longitudinal medical record in this case reveals that the Plaintiff underwent a number of procedures and treatment regimens in attempts to alleviate her chronic abdominal problems. On July 22, 2005, the Plaintiff underwent an exploratory laparotomy, which revealed the presence of abdominal adhesions and confirmed a preoperative diagnosis of

choledocholithiasis. R. 574-77. While the Plaintiff's prognosis was initially positive, she was readmitted to the emergency department the week after her surgery for related complications and was eventually discharged with the recommendation to take the next thirty days for convalescent leave. R. 805-15, 881-83. Progress notes over the next several months revealed suspicious post-operative changes and recurrent complaints of abdominal pain. R. 580-81, 666-67. In November 2005, the Plaintiff began pain management treatment with Dr. Caudill at the Institute of Pain Management. R. 777-79. During this time, the Plaintiff stated that "her pain … drastically increased with a constant dull, aching [and] nagging" in the right upper quadrant of her abdomen at a level of seven out of ten. *Id.* The Plaintiff cried throughout her initial physical examination due to severe pain, and additional reported symptoms included decreased appetite, nausea, and vomiting. *Id.* Dr. Caudill recommended weekly celiac plexus block treatment as well as prescription pain medications to alleviate her symptoms. R. 772-79. Throughout 2006, the Plaintiff continued to complain of abdominal pain and related symptoms. A February 2006 CT scan report revealed the presence of a suspicious bowel segment and confirmed the Plaintiff's recurrent abdominal pain. R. 413-14. In April 2006, Dr. Godbole opined that the Plaintiff was unable to work because of "weight loss, nausea and chronic post-operative abdominal pain." R. 758. A June 2006 examination by Ajmal Hameed, M.D., revealed that the Plaintiff's pain had "not improved lately and is progressively getting worse." R. 508. By early 2007, the Plaintiff reported that her abdominal pain had stabilized at the moderate level, but she reported new problems in the hands and joints as well as depressive symptoms and side effects form her medications. R. 649-57.

Over the course of the next year, the Plaintiff continued treatment at the Institute of Pain Management for abominable pain at the moderate to severe level. During this time, the Plaintiff

lost a significant amount of weight due to her symptoms, which included nausea and loss of appetite. R. 642-43 (noting that the Plaintiff was "too thin"). In an August 2007 letter, Orlando G. Florete, M.D., noted that the Plaintiff was "very stable" on a regimen of Duragesic patches, but also noted that the Plaintiff's condition was chronic, unchanged, and only controlled "to a certain degree" with medications. R. 559. In a separate August 2007 letter, Bassam Rizk, M.D., found that the Plaintiff's chronic abdominal pain "seems to be related to [her] extensive adhesions, which are in direct correlation to the gallbladder and liver surgery done in the past." R. 436. Dr. Rizk opined that "[a]t this point, [he did] not feel that [he] can improve on her symptoms and this is a condition that she may have to live with." *Id.* In January 2008, the Plaintiff reported severe abdominal pain at a level of eight out of ten and consistent nausea with vomiting over the past week. R. 553. Over the remainder of the relevant period, the Plaintiff continued treatment with the aforementioned physicians for varying levels of abdominal pain as well as other physical and mental symptoms including neck pain, back pain, knee pain, insomnia, fatigue, depression, and medication side effects.

After reviewing the multi-year treatment record, it is clear that additional discussion is needed to demonstrate that the ALJ fully and fairly assessed the Plaintiff's RFC in this case. As the Plaintiff correctly notes in her brief, the voluminous medical record contains ample evidence to support Dr. Godbole's and Caudill's opinions. To that end, the Court finds that the ALJ did not demonstrate good cause for discounting Dr. Godbole's findings by simply stating that his opinions were inconsistent with the objective medical record, especially in light of the abundance of corroborative findings discussed by the Court *supra*. Further, the Defendant provides little support for its contention that the "evidence sharply contradicts Dr. Godbole's opinion that Plaintiff experienced disabling nausea, weight loss, and abdominal pain...." (Dkt. No. 17 at 8.)

While the Defendant rightly asserts that the treatment record revealed progress notes identifying mild to no pain at times during the relevant period, Dr. Godbole noted that the Plaintiff's chronic pain was likely to cause good days and bad days, and the Plaintiff's success in stabilizing her pain symptoms was often accompanied by numerous medication side effects. *See* R. 45, 365, 1346. The Plaintiff's varying reports of pain over the course of many years also tends to support her subjective statements that her symptoms produced good and bad days. *See* R. 47-48. Nevertheless, taken as a whole, the objective record shows that the Plaintiff suffered from chronic abdominal pain and related symptoms throughout the relevant period, and regardless of the Plaintiff's actual functional limitations during this time, the ALJ failed to properly support his conclusions with substantial evidence.

Similarly, the ALJ also failed to support his decision to afford Dr. Caudill's opinion little weight in light of the contradictory evidence on record. The ALJ noted the Plaintiff's improvement in the years leading up to Dr. Caudill's November 2012 evaluation, but he failed to explain how this improvement negated the contradictory findings that appeared over the course of many years during the relevant period in this case. The Defendant contends that the Plaintiff is improperly asking the Court to reweigh the medical evidence on record, which would be beyond the Court's purview. However, the Court is not persuaded by this argument, as the ALJ failed to demonstrate that he properly weighed the medical evidence in the first instance. Finally, the Court finds that the ALJ failed to properly assess the consultative opinion of Lauren Lucas, Ph.D., who opined that the Plaintiff was "psychologically competent to perform a routine repetitive task and to appreciate the need for appropriate relations among coworkers and supervisors." R. 1210-12. While the ALJ mentioned Dr. Lucas's opinion in the beginning of his

Decision, he failed to state with particularity the weight he gave to her opinion and the reasons therefor. *Sharfarz v. Bowen*, 825 F.2d 278, 279-80 (11th Cir. 1987).

In sum, the Court finds that the ALJ failed to sufficiently evaluate the medical record in this case and "state with some measure of clarity the grounds for his decision." *Winschel v. Commissioner*, 631 F.3d 1176, 1179-80 (11th Cir. 2011). Considering the depth and length of the objective medical record in this case, it was error for the ALJ to simply discount treating and examining opinions by summarily stating that they conflicted with the broader record. While the Commissioner contends that the Plaintiff's "argument entirely ignores the ALJ's extensive discussion of medical and other evidence preceding his rejection of the opinions," the Court is unable to infer the ALJ's reasoning from his relatively limited discussion of the pertinent medical evidence in this case. (Dkt. No. 17 at 10.) Without further explanation, the Court cannot determine whether the ALJ's Decision was based on substantial evidence. Thus, on remand, the ALJ must reconsider the objective medical record and various medical opinions issued in this case. If, upon reconsideration, the ALJ chooses to afford limited or no weight to these opinions, he must support his conclusions with specific references to the medical record.

### B. The ALJ's Evaluation of the VA's 100% Disability Rating

The Plaintiff also argues that the ALJ erred by failing to sufficiently explain why he discounted the Plaintiff's 100% disability rating by the VA. The Eleventh Circuit has held that a "VA rating is certainly not binding on the Secretary, but it is evidence that should be considered and is entitled to great weight." *Kemp v. Astrue*, 308 F. App'x 423, 426 (11th Cir. 2009) (quoting *Rodriguez v. Schweiker*, 640 F.2d 682, 686 (5th Cir. 1981)). Further, the Social Security regulations specify that a decision by any non-governmental or governmental agency about whether an individual is disabled is based on its own rules and does not constitute a Social

Security decision about whether an individual is disabled. *See* 20 C.F.R. § 404.1504. However, if the ALJ rejects the VA's disability rating, the ALJ should state the reasons for doing so to allow for a reasoned review by the court. *Cronin v. Commissioner*, Case No. 6:10-CV-1765-Orl-DAB, 2012 WL 3984703, at *6 (M.D. Fla. Sept. 11, 2012).

On February 20, 2007, the VA determined that as of September 12, 2006, the Plaintiff was 100% disabled because she was unable to work due to her impairments. R. 423-27. The VA found that the Plaintiff's abdominal impairments caused the most debilitating functional restrictions and provided a discussion of the medical record to support its conclusions:

> A review of all the evidence, including private treatment records, statements and your VA exam was performed for this claim. There is ample evidence that this condition has caused you to have multiple procedures including laparotomy, celiac plexus blocks, pelvic and abdominal scans, and colonoscopies. Numerous treatment reports were available for review, and show repeated abdominal problems. The lay statements submitted also show you have had continual pain and severe weight loss due to this condition, the statements by Dr. Godbole also indicate the condition's severity and [Dr.] Godbole also notes pain due to this scarring. The evidence as stated supports a separate, compensable evaluation for this condition.

R. 424-25. In his Decision, the ALJ noted that the Plaintiff received a 100% disability rating by the VA, but seemingly discounted this evidence because "a disability determination made by another agency that a claimant is disabled is not binding on the Social Security Administration." R. 25.

While the ALJ correctly cited the relevant regulations regarding non-agency findings, the ALJ also erred by summarily rejecting the VA's 100% disability rating without explaining the weight afforded to it. *See Rodriguez v. Schweiker*, 640 F.2d 682, 686 (5th Cir. 1981) (finding that the ALJ should have "more closely scrutinized" the VA's disability rating of 100% for the claimant, where the ALJ mentioned the rating but "obviously refused to give it much weight."); *see also Smith v. Astrue*, Case No. No. 3:08-cv-406-J-TEM, 2009 WL 3157639, at *7 (M.D. Fla.

Sept. 25, 2009) (finding that ALJ's conclusory reference to VA disability determination without discussion of weight given warranted remand for the ALJ to apply the correct legal standard). Therefore, in addition to the reasons provided *supra*, the Court also finds that this case should be remanded so that the ALJ may explain the weight afforded to the VA's 100% disability rating. If the ALJ concludes the VA disability determination should be rejected, in part or whole, he should provide valid reasons for doing so.

C. **The Plaintiff's Remaining Arguments**

The Plaintiff presents a number of alternative arguments in her brief, which involve similar issues relating to the ALJ's analysis of the administrative record in this case. Since, on remand, the ALJ must reconsider the medical opinions and other evidence on record, which may ultimately result in an alternative RFC assessment or hypothetical question to the VE, the Court finds that the disposition of these remaining issues would be, at this time, premature.

V. **Conclusion**

Upon consideration of the foregoing, it is **ORDERED** that:

1. The Commissioner's final decision in this case is **REVERSED** and **REMANDED** for further proceedings consistent with the findings in this order.

2. The Clerk is directed to enter judgment accordingly and **CLOSE** the file.

3. The Plaintiff is advised that the deadline to file a motion for attorney's fees pursuant to 42 U.S.C. § 406(b) shall be no later than thirty (30) days after the date of the Social Security letter sent to the plaintiff's counsel of record at the conclusion of the agency's past due benefit calculation stating the amount withheld for attorney's fees.

4. The Plaintiff is directed that upon receipt of such notice, he shall promptly email Mr. Rudy and the OGC attorney who prepared the Government's brief to advise that the notice has been received.

**DONE AND ORDERED** in Jacksonville, Florida on August 10, 2015.

MONTE C. RICHARDSON
United States Magistrate Judge

Copies furnished to:

Counsel of Record